## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CR491 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| BRYAN A. MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the defendant Bryan A. Miller's (Miller) Motion to Suppress (Filing No. 19). Miller is charged in the Indictment with knowing possession of four stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). **See** Filing No. 1. Miller seeks to suppress all statements made by him to law enforcement on October 13, 2004. Miller contends his questioning by special agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) occurred in violation of his Fifth and Sixth Amendment rights after he requested the presence of an attorney.

The Court held an evidentiary hearing for the motion to suppress on September 6, 2005. At the hearing, the Court heard the testimony of ATF Special Agents Frances Todd Monney (Special Agent Monney) and Zane Dodds (Special Agent Dodds). The Court received into evidence a uniform citation and complaint (Exhibit 1), a complaint (Exhibit 2) and an audiotape dated October 13, 2004 (Exhibit 3). A transcript (TR.) was prepared and filed in this matter on September 13, 2005. **See** Filing No. 26. Miller filed a brief (Filing No. 20) in support of his motion. The government filed a brief (Filing No. 22) in opposition to the motion. No post-hearing briefs were filed.

### FINDINGS OF FACT

Special Agent Monney has been a special agent with the ATF since 2003 (TR. 3). Special Agent Monney's responsibilities include investigating violations of federal criminal laws relating to explosives and firearms (TR. 3-4). Prior to his employment with ATF, Special Agent Monney was a special agent with the U.S. Department of Labor in the office of Labor

Racketeering and Fraud where he conducted investigations in Chicago, Illinois from 2001 until 2003 (TR. 3). Finally from 1989 until 2001, Special Agent Monney was a deputy sheriff with the County of Kankakee, Illinois (TR. 3). Special Agent Dodds has been with the ATF for approximately six years (TR. 15). Special Agent Dodds is responsible for investigating crimes relating to explosives, firearms, drugs and arsons (TR. 16). Prior to being a special agent, Special Agent Dodds was an inspector with ATF for two years (TR. 15).

On October 13, 2004, Special Agents Monney and Dodds conducted an interview of Miller regarding Miller's possession of some sawed-off shotguns and firearms recovered in August 2003 (TR. 4, 16-17). Special Agent Dodds became interested in Miller several months before the interview, but made no attempt to interview Miller until learning of an unrelated arrest (TR. 27-28). Special Agents Monney and Dodds went to Dakota County Jail where Miller was being held on charges related to methamphetamine possession (TR. 4; Exhibits 1 and 2). Miller had been arrested on October 11, 2004, with formal charges filed on October 12, 2004 (TR. 6; Exhibits 1 and 2). The drug-related investigation of Miller was unrelated to the investigation being done by Special Agents Monney and Dodds (TR. 6-7, 17).

On October 13, 2004, the agents met with Miller next to the sheriff's office in a conference room which was approximately fifteen feet by forty feet containing only a table and chairs (TR. 7). Miller was not in handcuffs or leg irons during the interview (TR. 28). Initially, Special Agent Monney was alone with Miller for approximately fifteen seconds while Special Agent Dodds started an audio recorder (TR. 8). During the time before the interview was tape recorded, Special Agent Monney did not make any promises or threats to induce Miller to speak to the agents (TR. 9). Miller did not appear to be under the influence of alcohol or drugs, but did appear coherent and to understand what was going on (TR. 9-10). However, Miller's demeanor was defensive and agitated (TR. 12). Special Agent Monney was unarmed (TR. 9). Special Agent Dodds was the case agent and would be primarily responsible for the interview (TR. 8-9, 16-17). Special Agent Monney was only vaguely familiar with the facts of the investigation before the interview (TR. 8).

When Special Agent Monney and Miller were alone, Miller asked what this was all about (TR. 10). Special Agent Monney stated for Miller to wait and Special Agent Dodds would explain (TR. 10). Miller stated words to the effect, "I want to talk to a lawyer before I talk

about it" (TR. 10-11). Special Agent Monney did not respond (TR. 11). At that time Special Agent Dodds entered the room and the remainder of the conversation was audio recorded without Miller's knowledge (TR. 11, 18, 28; Exhibit 3).

Special Agent Dodds showed Miller his ATF badge and explained who the agents were and why they were interested in talking to Miller (TR. 20). Special Agent Dodds also advised Miller of the ***Miranda*** warnings (TR. 20). Special Agent Dodds told Miller the reason for the warnings was because Miller was in custody on the other charges (TR. 20). Typically, Special Agent Dodds does not advise an interviewee of the ***Miranda*** warnings when the individual is interviewed at their home or place of employment (TR. 20-21). Miller told the agents that he understood his rights (TR. 21). After Special Agent Dodds explained the reason for the interview, about firearms recovered on other individuals, Miller answered questions and made statements about the firearms (TR. 21-22). After Special Agent Dodds explained the reason for the interview, Miller's demeanor changed to be cooperative and calm (TR. 12). Miller was cordial and relaxed, even laughing and yawning during the interview (TR. 22-23). Special Agent Dodds did not make any promises or threats to induce Miller to speak to the agents (TR. 22). Miller did not appear to be under the influence of alcohol or drugs, but did appear coherent and to understand what was going on (TR. 23). Special Agent Dodds was not armed during the interview (TR. 22). Special Agent Dodds never heard Miller say anything concerning an attorney (TR. 23). The interview lasted twenty to thirty minutes (TR. 23). Special Agent Dodds did not know the content of the conversation between Special Agent Monney and Miller until the conclusion of the interview (TR. 19).

## LEGAL ANALYSIS

Miller argues the statements he made to law enforcement agents on October 13, 2004, should be suppressed because such statements were involuntary and made after Miller had invoked his rights to counsel. Miller contends the statements he gave were taken in violation of his Fifth and Sixth Amendment rights. The government contends Miller's statement that he "would want a lawyer before he would talk about it" was not a clear and unambiguous invocation of his right to counsel. Further, the government contends the Sixth Amendment is inapplicable because the topic of the interview related to uncharged offenses.

## A.      Fifth Amendment

Once a defendant expresses his desire to have counsel present, he is not subject to further interrogation by law enforcement until counsel has been made available to him unless the defendant himself initiates further communication, exchanges, or conversation with the law enforcement officers.  *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).  The burden remains upon the prosecution to demonstrate a waiver of an accused's right to have counsel present after an initial invocation of counsel.  *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983).  However, a suspect must clearly and unambiguously request a lawyer in order to trigger his Fifth Amendment right to counsel.  *Davis v. United States*, 512 U.S. 452, 462 (1994) (holding "Maybe I should talk to a lawyer" is insufficient to trigger Fifth Amendment right to counsel.); *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003) (holding the defendant's question "do you know any good attorneys" was not unequivocal request for assistance of counsel); **see also** *Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) (holding on habeas review that it was not an unreasonable application of clearly established Supreme Court precedent for a state court to find the statement, "[c]ould I call my lawyer?" insufficient to invoke the right to counsel and mandate the termination of questioning).

> The right to counsel recognized in *Miranda* is sufficiently important to suspects in criminal investigations, we have held, that it "requir[es] the special protection of the knowing and intelligent waiver standard."  If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him.  But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.  This "second layer of prophylaxis for the *Miranda* right to counsel," is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights."  To that end, we have held that a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present.

*Davis*, 512 U.S. at 458 (internal citations omitted).

Determination of whether accused has actually invoked right to counsel is an objective inquiry.  *Davis*, 512 U.S. at 459.  "[I]f a suspect makes a reference to an attorney that is

ambiguous or equivocal in that a reasonable officer *in light of the circumstances* would have understood only that the suspect *might be invoking* the right to counsel, our precedents do not require the cessation of questioning." *Id.* (emphasis added).

Furthermore,

> "[F]ull comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process." A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although *Edwards* provides an additional protection--if a suspect subsequently requests an attorney, questioning must cease--it is one that must be affirmatively invoked by the suspect.

*Id.* at 460-61. The Court in *Davis* did not, however, go so far as to require law enforcement officers to ask clarifying questions if the suspect's reference to counsel is ambiguous or equivocal. *Id.* at 461-62.

Considering Miller's statement outside the context of what occurred in the conference room on October 13, 2004, "I want to talk to a lawyer before I talk about it" appears to be a clear invocation of Miller's right to counsel. But such an inquiry is not the correct inquiry in light of the Supreme Court's clear precedent. The court must consider a defendant's statement referencing counsel "*in light of the circumstances*" and as "*a reasonable officer*" would have understood the statement in the context in which the statement was made. Miller was not subject to interrogation when he made the statement. Miller made the statement referencing his right to counsel before he knew why the ATF agents wanted to interview him and before Special Agent Dodds advised him of the *Miranda* warnings. Although Special Agent Dodds was not aware of the statement about talking to a lawyer, the subsequent explanation and advice of rights is equivalent to an attempt to clarify the earlier statement. Furthermore, Special Agent Dodd's administering the *Miranda* warnings can hardly be characterized as the type of "badgering" a witness into waiving any previously asserted *Miranda* right that the Supreme Court precedent seeks to curtail. *See Davis*, 512 U.S. at 458. It is noteworthy that Miller's demeanor changed when he realized the interview would be about a subject other than his then-pending drugs charges. Also, Miller stated he understood

his rights, including the right to counsel and to have counsel present for questioning, prior to making any incriminating statements to the agents. Miller did not clearly and unambiguously invoke his right to counsel.

Miller argues Special Agent Dodds' comment that he would not have to advise Miller of his *Miranda* rights if Miller were not already in jail was a form of coercion. The context and manner of the comment, regardless of it's truth, cannot be seen to overbear Miller's will to render the later statements involuntary. Accordingly, the Court finds Miller did not invoke his right to counsel, but gave knowing and voluntary statements to ATF agents on October 13, 2004.

**B.   Sixth Amendment**

"[O]nce formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case in chief statements 'deliberately elicited' from a defendant without an express waiver of the right to counsel." *Michigan v. Harvey*, 494 U.S. 344, 348 (1990). In particular, the Sixth Amendment guarantees a defendant the right to assistance of counsel at postindictment interviews. *Patterson v. Illinois*, 487 U.S. 285, 290 (1988). After indictment, "any waiver of Sixth Amendment rights given in a discussion initiated by police is presumed invalid." *Harvey*, 494 U.S. at 349. However, "[i]f an accused 'knowingly and intelligently' pursues [his choice to communicate with police officers without counsel], we see no reason why the uncounseled statements he then makes must be excluded at his trial." *Patterson*, 487 U.S. at 291. Therefore, statements made during a postindictment interview are admissible where the defendant has made a "voluntary, knowing, and intelligent relinquishment of the Sixth Amendment right to counsel." *Harvey*, 494 U.S. at 348-49; *United States v. Chadwick*, 999 F.2d 1282, 1285 (8th Cir. 1993). Further, "when a suspect waives his right to counsel after receiving warnings equivalent to those prescribed by *Miranda v. Arizona*, [384 U.S. 436 (1966)], that will generally suffice to establish a knowing and intelligent waiver of the Sixth Amendment right to counsel for purposes of postindictment questioning." *Harvey*, 494 U.S. at 349.

The Sixth Amendment right to counsel does not attach without "the existence of both a 'criminal prosecutio[n]' and an 'accused.'" *United States v. Ingle*, 157 F.3d 1147, 1151

(8th Cir. 1998) (**citing** ***United States v. Gouveia***, 467 U.S. 180, 188 (1984)). "Thus, the right 'does not attach until after the initiation of formal charges.'" ***Ingle***, 157 F.3d at 1151 (**citing** ***Moran v. Burbine***, 475 U.S. 412, 431 (1986)). Further, "[i]t cannot be invoked once for all future prosecutions." ***Id.*** For this reason, "government investigations of new criminal activity for which an accused has not yet been indicted do not violate the Sixth Amendment." ***United States v. Kidd***, 12 F.3d 30, 32 (4th Cir. 1993). Instead, only "incriminating statements pertaining to pending charges are inadmissible at the trial of those charges." ***Maine v. Moulton***, 474 U.S. 159, 180 (1985).

In this case, Miller's Sixth Amendment right to counsel had not attached regarding any interview for the later firearms charges. The ATF agents did not ask Miller about his pending charges, and, in fact, specifically warned Miller not to talk about the pending charges (Exhibit 3). Therefore, the ATF interview does not implicate a violation of Miller's Sixth Amendment right to counsel. Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Bryan A. Miller's Motion to Suppress (Filing No. 19) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 19th day of October, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

7